

NEW JERSEY OFFICE NEW YORK OFFICE
06 POMPTON AVENUE, SUITE 25 347 5TH AVENUE, SUITE 1402
CEDAR GROVE, NJ 07009 NEW YORK, NY 10016
(973) 239-4300 (646) 205-2259

LORRAINE@LGRLAWGROUP.COM
WWW.LGAULIRUFO.COM
FAX: (973) 239-4310
_____

September 3, 2024

*Via ECF*
Honorable Brian R. Martinotti
United States District Judge
Martin Luther King Building and U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

 Re: *United States v. Kearney et al*
 Crim. No. 2:21-CR-00838 (BRM)

Dear Judge Martinotti,

 Please accept this letter brief in lieu of a more formal submission supplementing the defense's motion to dismiss count 42 of the Second Superseding Indictment as unconstitutional as applied to him pursuant to *Range v. Att'y Gen. of the United States*, 69 F.4th 96 (3d Cir. 2023). *See* briefing at Docket No. 387, 413, 436, and 457. For the reasons stated in our initial submission and for the reasons stated below, this Court should grant Mr. Kearney's motion to dismiss count 42 of the indictment against him.

 **1. *Rahimi* has done nothing to abrogate the holding of *Range*.**

 In June of this year, the Supreme Court of the United States has vacated the judgement in *Range v. Att'y Gen. of the United States*, 69 F.4th 96 (3d Cir. 2023) and remanded it to the Third Circuit for further consideration in light of the Supreme Court's recent decision in *United States v. Rahimi*, 602 U.S. \_\_ (2024). *Rahimi*'s holding has not abrogated *Range*, and *Range* will continue to control this Court.

 In *Rahimi*, the Court considered the constitutionality of 18 U.S.C. § 922(g)(8)(C) and determined that "when a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual may—consistent with the Second Amendment—be banned from possessing firearms while the order is in effect." *Rahimi*, 602 at \*5 (slip. op.).

The question before the Supreme Court in *Rahimi* was fundamentally different than the question before the Third Circuit in *Range*. First, and most obviously, *Rahimi* was addressing a completely different subsection of the 922(g) statute than *Range*—*Rahimi* considered the constitutionality of section 922(g)(8)(C)(i) while *Range* considered section 922(g)(1). That alone demonstrates that *Range* should remain unaffected by *Rahimi*. However, the *Rahimi* Court's *Bruen* analysis also demonstrates that *Range* will remain good law. *Rahimi* was mostly silent on the question of whether Rahimi and his purported conduct were protected by the Second Amendment. The *Rahimi* Court seemed to assume that he and his conduct were both protected. As such, the holding in *Range* that Range and his conduct were protected by the Second Amendment remains unaffected. The *Rahimi* Court instead grappled with the second part of the *Bruen* test, whether section 922(g)(8) has historical analogues that show such a regulation is part of this Nation's history and tradition of firearm regulation. While the Court answered that question in the affirmative, the lengthy historical analysis detailed in *Rahimi* shows that the historical analysis that underpins the *Range* decision will remain sound as applied to the question of the constitutionality of section 922(g)(1). The two are dissimilar.

The *Rahimi* Court held that multiple founding-era laws proffered by the government to satisfy its burden in showing that section 922(g)(8) was consistent with the Nation's historical tradition of firearm regulation were in fact "relatively similar" to section 922(g)(8)(C)(i) insofar that those founding-era laws and 922(g)(8) similarly burdened an individual's Second Amendment Right "in both why and how." *Rahimi* 602 U.S. at *9 (slip. op.). The founding-era laws found to satisfy this burden in *Rahimi* would not help the government meet that same burden in *Range*.

As made clear by the *Rahimi* Court, the "appropriate analysis [under *Bruen*] involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id*. at *6. "Why and how the regulation burdens the right are central to this inquiry." *Id*. The *Rahimi* Court discussed several pre- and post- founding-era regulatory schemes that targeted "individuals who physically threatened others." *Id*. at *7. One category of laws that the *Rahimi* Court found sufficiently analogous to the modern-day section 922(g)(8) were surety laws. *Id*. These laws, which targeted the misuse of firearms, we grounded in ancient tradition and prevalent at the founding of our Republic. *Id*. at *8. Surety laws were meant to prevent violence before it occurred and required those who were suspected to pose a risk of future violence to post a bond as a surety that they would keep peace *Id*. If those individuals failed to post bond, they would be jailed, and if they posted bond and broke the peace, the bond would be forfeited. *Id*. Importantly, such burdens "could not be required for more than six months at a time, and an individual could obtain an exception if he needed his arms for self-defense or some other legitimate reason." *Id*. A second category of founding-era laws that the *Rahimi* Court found sufficiently analogous to the modern-day section 922(g)(8) were "going armed" laws, which were designed to punish those who had "menaced others with firearms." *Rahimi*, 602 at *8 (slip. op.). These laws specifically targeted people who armed themselves "to the Terror of the People." *Id*. at *9 (internal citation omitted). The *Rahimi* Court concluded that, "[t]aken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id*. Section 922(g)(8)'s "prohibition on the possession of firearms by those found by a court to

present a threat to others fits neatly within the tradition the surety and going armed laws represent." *Id*.

Surety laws and "going armed" laws may be similarly analogous to section 922(g)(8), but they are not similarly analogous to section 922(g)(1). Surety laws and "going armed" laws burdened an individual's Second Amendment to deter violence from individuals with a demonstrated propensity for it. Section 922(g)(1), by contrast, dispossesses *all* individuals with prior felony convictions, regardless of their demonstrated propensity of violence—a much larger class of individuals. The *Rahimi* Court was guided by the premise that "Section 922(g)(8) applies only once a court has found that the defendant represents a credible threat to the physical safety of another." *Id*. Moreover, the *Range* court specifically took issue with the large swath of individuals 922(g)(1) dispossesses, stating that founding era status-based disarmament schemes are not an appropriate analogue to 922(g)(1) as they are 1) "far to broad" and 2) "now would be unconstitutional under the First and Fourteenth Amendments." *Range*, 69 F. 4th at 104-105.

Further, unlike Section 922(g)(8), which dispossesses individuals for a finite amount of time, Section 922(g)(1) dispossesses individuals with prior felony convictions *for life*. Indeed, the *Rahimi* Court's holding is based in part on this premise—as the Court explained, "like surety bonds of limited duration, Section 922(g)(8)'s restriction [is] temporary…so long as the defendant 'is' subject to a restraining order." *Rahimi*, 602 U.S. at *10 (slip. op.). As the *Range* court explained, the government in that case was unable to demonstrate that lifetime disarmament is rooted in our Nation's history and tradition. *Range* at 105. The surety and "going armed" laws discussed in *Rahimi* likewise would not demonstrate such a tradition.

### 2. *Rahimi* has clarified that the scope of the inquiry at step 1 of the *Bruen* analysis is narrow.

The *Rahimi* court's holding confirms that the scope of the inquiry under *Bruen* as to whether Mr. Kearney's alleged conduct is covered by the plain text of the Second Amendment is a narrow one. The statute at issue in *Rahimi*, section 922(g)(8)(C)(i), dispossesses any person "who is subject to a court order that…includes a finding that such person represents a credible threat to the physical safety of [an] intimate partner or child." The *Rahimi* Court held that "when a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual may—consistent with the Second Amendment—be banned from possessing firearms while the order is in effect." *Rahimi*, 602 at *5 (slip. op.). The Supreme Court defined the defendant's purported conduct congruent with the conduct section 922(g)(8)(C)(i) regulates—possessing a firearm while such a court order is in effect. There is no inquiry into why or for what purpose Mr. Rahimi possessed such firearm—nor should there be. To require a defendant to proffer a specific purpose for their conduct in that instance would read an element into the statute that does not exist. The same is true in the case before this Court. Mr. Kearney's conduct, consistent with *Rahimi*, shall be defined congruently with the statute that regulates his purported conduct. Luckily, the *Range* court has answered the question of whether Mr. Kearney's conduct and the statute with which Mr. Kearney was charged regulates Second Amendment conduct: "we turn to the easy question: whether § 922(g)(1) regulates Second Amendment Conduct. It does." *Range*, 69 F.4th at 103.

3

3. **Conclusion**

In short, *Rahimi* is readily distinguishable from *Range* and does not abrogate its holding. Furthermore, its holding clarifies the scope of the inquiry this Court must conduct when determining whether Mr. Kearney's purported conduct is protected by the 2nd Amendment. *Range* will likely continue to be binding precedent on this Court.

Sincerely,

Lorraine Gauli-Rufo, Esq.
*Attorney for Angel Kearney*

cc: Robert Frazer, AUSA