

Lorraine@lgrlawgroup.com
WWW.LGAULIRUFO.COM

NEW JERSEY OFFICE
06 POMPTON AVENUE, SUITE 25
CEDAR GROVE, NJ 07009
(973) 239-4300

NEW YORK OFFICE
347 5TH AVENUE, SUITE 1402
NEW YORK, NY 10016
(646) 205-2259

January 8, 2025

*Via ECF*
Hon. Brian R. Martinotti
United States District Court Judge
Frank Lautenberg Post Office
United States Courthouse
2 Federal Square
Newark, NJ 07101

Re: *United States v. Kearney*, et al.
Crim. No. 2:21-CR-00838 (BRM)

Dear Judge Martinotti,

Please accept this letter brief in *lieu* of a more formal submission in support of the defense's motions *in limine*.

**I.     The Court should preclude the government from introducing government Exhibit 320 as either evidence intrinsic to the crime charged or as evidence under Fed. R. Evid. 404(b) because it has not been properly authenticated, it is not relevant, and is not admissible under 404(b).**

In a December 13, 2024 letter, (hereinafter "the government's 404b letter") the government indicated to the defense that it was going to seek to introduce several pieces of evidence that they considered as "evidence…intrinsic to the crimes charged," but, "out of an abundance of caution," will "move in the alternative to admit the evidence under Rule 404(b)." *See* Defense Exhibit A.[1] The first piece of evidence, Exhibit 320, is a photograph posted on Facebook on or about June 20, 2020 depicting Mr. Kearney along with a number of his co-

---

[1] All Defense Exhibits, A through L, have been attached under separate cover on a flash drive that will be hand delivered to the Court on January 9, 2025.

defendants. Exhibit 320 is attached under separate cover as Defense Exhibit B. The government should be precluded from moving this photo into evidence as it has not been properly authenticated, it is not relevant to the crime charged, and it cannot be properly admitted under Fed. R. Evid. 404(b).

### a. The government will be unable to meet its burden to authenticate Exhibit 320 under Fed. R. Evid. 901.

The defense objects to the admission of government Exhibit 320, as it has not been properly authenticated under Fed. R. Evid. 901. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). This photo was posted to Facebook on June 20, 2020. However, we have no idea when this photo was actually taken—it could have been taken months or even years before it was posted on the internet. Further, there is no indication of who took the photo, where the photo was taken, or whether it remains in its original form, i.e., whether or not it was photo-shopped or altered in any way. The defense submits that in order to lay the proper foundation to authenticate this photograph, the government would be required to produce the individual who took this photo to testify as to where and when it was taken, that no changes have been made to it, and it remains in its original state. Unless the government can meet that burden (and no such individual appears on the government's witness list that the defense received today who would be in a position to do this), this photo should not be admitted pursuant to Fed. R. Evid. 901.

### b. Exhibit 320 is not relevant to the purported conspiracy as charged in the Second Superseding Indictment against Mr. Kearney, and thus should be excluded from evidence.

Even if the government could somehow authenticate this photo, the Court should deny the government's motion to introduce Exhibit 320 as intrinsic evidence of Mr. Kearney's alleged membership in a drug conspiracy charged in Count One of the Second Superseding Indictment ("the indictment") for two reasons: first, the photo is not relevant to crime as charged under Fed. R. Evid. 401, and second, even if it was relevant, it is unfairly prejudicial to Mr. Kearney and should be excluded under Fed. R. Evid. 403.

Exhibit 320 is not relevant to Mr. Kearney's criminal case. Pursuant to Fed. R. Evid. 401, "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequences in determining the action." In the government's 404(b) letter, the government advised that they intended to admit this photograph "as intrinsic evidence of the defendant's membership in the drug conspiracy…." Count One of the indictment has a specified time period during which Mr. Kearny is alleged to have been a member of a conspiracy—"from at least as early as in or around July 2020 through in or around June 2021." *See* Dkt. 237 at 1. As mentioned, we have absolutely no idea when this photo was taken. Even so, we *do* know that it absolutely must have been taken before the time period of the alleged conspiracy. As visible in the caption of the photo, the photo was posted to Facebook June 20, 2020, the month prior to the beginning of the alleged conspiracy as charged in the indictment. *See* Exhibit B. A photo depicting Mr. Kearney's association with his co-

defendants at some point in time—it could be a month prior, or years prior—before an alleged conspiracy began does not make it more or less probable that Mr. Kearney was in such a conspiracy from in or around July 2020 to in and around June 2021. The photo was taken outside the timeframe in question and thus should not be admitted as evidence of his alleged involvement in this conspiracy.

Moreover, the photograph of 13 individuals on and around a car, not engaged in any illegal activity, does not establish intrinsic evidence that Mr. Kearney was a member of a drug trafficking organization ("DTO") conspiracy. In fact, to the best of the defense's knowledge, seven of the 12 individuals in the photo are not charged in the conspiracy and no discovery has been provided to the defense to show that these individuals are unindicted co-conspirators. This photo adds an additional seven individuals to suggest a much larger group and the involvement of individuals other than those actually alleged to be involved in the wrongdoing. That in and of itself is unfairly prejudicial.

Even if Exhibit 320 was relevant, the Court should exclude it as unfairly prejudicial pursuant to Fed. R. Evid. 403. Under Fed. R. Evid. 403, the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." This photo is unfairly prejudicial based on a variety of factors. Were the jury to see these photos, there is a substantial risk that they will use it to make an impermissible inference and conclude that because he has associated with these individuals in the past, he must be associated with them now and must have illegally conspired with them in this case. Moreover, only six individuals in the photograph are charged in this conspiracy. Presenting a photo of Mr. Kearney in a group of 13 individuals, seven of whom are not charged in the conspiracy (or unindicted co-conspirators), suggest a much larger group of individuals associated in the wrongdoing than those who actually were. In this regard, the introduction of this photo into evidence is also unfairly prejudicial.

    **c.** **Exhibits 320 should also be excluded as 404(b) evidence, as it requires an impermissible inference under 404(b)(1) and the government has not identified any other "permitted use" for which they would offer this evidence under 404(b)(2).**

Assuming this Court excludes Exhibit 320 as intrinsic evidence of the crime in this case, the Court should likewise exclude this photo to the extent the government moves to have it admitted under Fed. R. Evid. 404(b). Rule 404(b) prohibits evidence of other acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The "evidence may be admissible for another purpose, such as proving motive." Fed. R. Evid. 404(b)(2). To determine the admissibility of prior acts evidence a district court must determine "whether the evidence (1) has a proper evidentiary purpose under Rule 404(b); (2) is relevant under Rule 402; (3) is of such probative value as to outweigh the prejudice to the defendant as required by Rule 403; and (4) is accompanied by a proper limiting instruction." *United States v. Smith*, 725 F.3d. 340, 344 (3d Cir. 2013). "To meet the first requirement for admissibility, the proponents of Rule 404(b) evidence must do more than conjure up a proper purpose—they must also establish a chain of

inferences no link of which is based on a propensity inference." *Id.* at 345. Courts should exclude such evidence if it "invites the inference that the person acted in conformity with that character, and is therefore more likely to have committed the charged crime." *Id.*

First, this photograph is not of "other acts" in accordance with 404(b). It is merely a photograph of individuals standing together on and around an automobile. Associating with individuals, absent any depiction of wrongdoing, cannot be said to be a "prior bad act" contemplated by 404(b). Research has not disclosed any case law that provides that a photo of individuals standing together, absent them doing something specific, qualifies as 404(b) evidence. The only thing these photos show is that these individuals may know each other.

Second, the government has not met its burden under prong one of the admissibility test for 404(b) evidence, as it has not proffered *any* permitted purpose under 404(b)(2). As such, the only logical inference that can be drawn from this photo is that because Mr. Kearney associated with these individuals on a particular occasion, he associated with them during the time of the conspiracy, and thus is more likely to have committed the crime charged in Count One of the indictment. That is precisely the inference that rule 404(b) prohibits. Even if the government does proffer a permissible purpose under 404(b)(2), the exhibit is not relevant and prejudicial, as discussed in sections (I)(b) *supra*. As such, the Court should exclude Exhibits 320 to the extent that the government moves for its admission under Rule 404(b).

**II.    This Court should preclude the government from introducing government Exhibit 320A as either evidence intrinsic to the crime charged or as evidence under Fed. R. Evid. 404(b) because it has not been properly authenticated, it is not relevant, and is not admissible under 404(b).**

The defense objects to the admission of government Exhibit 302A[2], which appears to be the same photo as government Exhibit 302 except the government has added names to the photo. Initially, we assert all of the basis to exclude this photo from evidence that was set forth in Section I(a) – (c) *supra*, particularly focusing on that the photo has not been properly authenticated, is not relevant and is extremely prejudicial. However, we also add to that argument that the alteration of the photo by the government (by adding names to the photo), providing its own writing and its own determination of the people involved in the alleged conspiracy, also unfairly prejudices Mr. Kearney.

**III.    The Court should preclude the government from introducing portions of government Exhibit 116 as either evidence intrinsic to the crime charged or as evidence under Fed. R. Evid. 404(b).**

The third piece of evidence the government indicated it intended to introduce in its 404(b) letter is Exhibit 116, an audio and video recording of a May 26, 2021 controlled narcotics purchase between a confidential human source ("CHS") and Mr. Kearney.

In this video, A CHS is speaking to an individual on the phone who is giving the CHS

---

[2] Attached under separate cover in Defense Exhibit B. Both Government Exhibits 320 and 320A were reproduced to the Court together in one exhibit for convenience.

directions on where to meet him. *See* Government Exhibit 116, attached under separate cover as Defense Exhibit C. The CHS and the individual hang up the phone, and the CHS drives to that location as directed by the other individual on the phone. *Id.* The CHS exits his vehicle and approaches a black Chevrolet Impala, opening the front passenger door. *Id.* At approximately 8:19, the CHS says "you don't want to sell that do you," and the individual in the driver's seat responds in the negative. *Id.* That exchange ends at approximately 8:23. In the government's 404(b) letter, the government alleges that a hand-to-hand narcotics purchase occurs thereafter. The video does not clearly depict such a transaction. The CHS shuts the passenger door of the black Impala and returns to his vehicle. *Id.*

At approximately 9:10, the CHS can be heard saying "he's got a P-40 right in his lap. I don't know if you want to grab him now." *Id.* The video ends with the CHS parking, exiting his vehicle, and entering the back seat of a vehicle where agents were waiting for him. *Id.*

The defense does not contest the admissibility of certain portions of the 17 minute and 5 second video. Specifically, the defense has no objection to the first 8 minutes and 19 seconds of the video (hereinafter "portion one"), provided the government lay the proper foundation to seek its admittance. Likewise, the defense does not objection to the admissibility of the portion from 8:23 to 9:09 (hereinafter "portion three"), subject to the same caveat. The remainder of the video, the portion from 8:19 to 8:22 (hereinafter "portion two") and the portion from 9:10 to 17:05 (hereinafter "portion four"), should not be admitted as evidence intrinsic to the crime charged because they are hearsay, they are not relevant, and they cannot properly be admitted under Fed. R. Evid. 404(b).

### a.   Both portions two and four of the video in government Exhibit 116 are hearsay and should thus be excluded from evidence barring an applicable exception.

Subject to certain exceptions, the rule against hearsay bars statements that the declarant does not make while testifying at the current trial or hearing and is offered into evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c)(1)-(2). The three statements made by the CHS in portions two and four of the video are such statements. The CHS specifically says: "you don't want to sell that do you," and "he's got a P-40 right in his lap. I don't know if you want to grab him now." All three of these statements were made out of court and are being used to prove the truth of the matter asserted, that Mr. Kearney had a .40 caliber gun on May 26, 2021 in the black Impala, and therefore must have been the owner of the 9 mm gun found in the same Impala on June 29, 2021. *See* government's 404(b) letter, Defense Exhibit A, indicating that these statements "will serve as attribution evidence that the gun recovered from the same Impala where the Defendant was arrested approximately one month later, on or about June 29, 2021 (as set forth in Counts 41 and 42 of the Second Superseding Indictment) belonged to the Defendant." This is precisely what the rule against hearsay prohibits. And, both portions two and four of the video in government Exhibit 116 should be excluded as hearsay.

**b. Portions two and four of the video in Gov. Exhibit 116 are highly prejudicial to Mr. Kearney and should be excluded from evidence.**

Even if this Court does not exclude portions two and four of the video as hearsay, the Court should exclude them because they are  to the crimes charged.[3] Any mention of or reference to a .40 caliber handgun should be prohibited—Mr. Kearney was not charged with possession of that weapon.

In Counts 41 and 42, Mr. Kearney was charged with possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) and being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g), respectively. In both Counts 41 and 42, the firearm in question was a 9mm G2S model handgun, bearing serial number TSL19810. Notably, the gun with which Mr. Kearney was charged in Counts 41 and 42 is *not* a .40 caliber handgun, or a "P-40." His alleged possession of a different gun on a different day does not make it more or less probable that he possessed a 9mm on the date of his arrest as charged in Counts 41 and 42.

Additionally, it is not relevant to the conspiracy as charged in Count 1 of the indictment. *See* the government's 404(b) letter, in which the government asserts "the Audio and Video is also evidence of the drug conspiracy charged in Count One, which states in the 'Manner and Means' section that the co-conspirators 'possessed, stored, and used firearms and ammunition to protect' their drug trafficking business."  We do not anticipate that the government will be introducing expert testimony that would support this, and therefore, the government will not be able to establish that the firearm at issue here is part of the manner and means of the conspiracy.

Even if the Court deemed portions two and four relevant to the question of whether Mr. Kearney was involved in a conspiracy, they are so highly prejudicial that they should be excluded. Firstly, the time that lapsed between the date of this video, May 26, 2021, and the date of his arrest, June 29, 2021, make the admittance of this evidence prejudicial. Over a month elapsed between those two occurrences—it has been established that the car was not registered to Mr. Kearney, and there is no indication of who all had access to that car during that month. Moreover, there is no suggestion that Mr. Kearney was the sole occupant of the vehicle for the duration of that month. Additionally, the implication derived from the audio and video in question is that the CHS is under the impression that Mr. Kearney sells firearms. Mr. Kearney was not charged with arms dealing, a very serious charge, and to allow the jury to believe that he was engaged in such conduct is so highly prejudicial that it outweighs any probative value portions two and four of the video may have.

**c. Admission of portions two and four of government Exhibit 116 would undoubtedly lead the jury to use that information for an impermissible propensity inference in violation of Fed. R. Evid. 404(b).**

To be relevant, proffered evidence must fit into 'a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity

---

[3] Even if the CHS is produced as a witness to testify in Mr. Kearney's trial, the defense will object to his testimony as it relates to portions two and four of the video as irrelevant.

inference.'" *United States v. Repak*, 852 F.3d 230, 243 (3d Cir. 2017) (quoting *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013)). The government has indicated it will, in the alternative, move to have Exhibit 116 admitted as 404(b) evidence, "because they depict a prior crime, wrong, or act of the Defendant, and tend to prove that his later possession of a firearm at the time of his arrest was not a mistake or accident, and was done knowingly." *See* the government's 404(b) letter. Allowing the government to introduce evidence that suggests Mr. Kearney possessed a .40 caliber gun that he was not charged with possession of would surely lead the jury to make the impermissible inference that Mr. Kearney has a propensity to carry guns, and must be responsible for the gun found in the black Impala on June 29, 2021. That is precisely what the law prohibits, and this Court should preclude the government from introducing portions two and four of government Exhibit 116 into evidence.

**IV.    This Court should not permit the government to use Mr. Kearney's prior convictions as impeachment evidence if he chooses to exercise his right to testify in his own defense because it would be prejudicial given the importance of his testimony to his case.**

Fed. R. Evid. 609(a)(1)(B) provides that when a witness was convicted of a crime punishable by more than one year in the convicting jurisdiction, the criminal conviction "must be admitted in a criminal case in which the witness is a defendant, **if** the probative value of the evidence outweighs its prejudicial effect to the defendant." (emphasis added). Mr. Kearney has seven prior convictions for controlled substance offenses and two prior convictions for unlawful possession a handgun, all of which occurred in New Jersey.

When determining whether the probative value of the evidence outweighs its prejudicial effect, the Court must begin with the assumption that the evidence is prejudicial. "This reflects a heightened balancing test and a reversal of the standard for admission under Rule 403." *United States v. Caldwell*, 760 F.3d 267, 286 (3d Cir. 2014). "[S]tructuring the balancing in this manner creates a 'predisposition toward exclusion.'" *Id.* (internal citation omitted). "An exception is made **only** where the prosecution shows that the evidence makes a tangible contribution to the evaluation of credibility and that the usual high risk of unfair prejudice is not present.'" *Id.* (emphasis added).

The Court must consider the factors as outlined in *United States v. Caldwell* when making this determination. Specifically, the Court must consider "'(1) the kind of crime involved, (2) when the conviction occurred, (3) the importance of the defendant's testimony to the case; and (4) the importance of the credibility of the defendant.'" *Id.* (citing *Gov't of Virgin Islands v. Bedford*, 671 F.2d 758, 761 n.4 (3d Cir. 1982)).

The Third Circuit has noted that when evaluating the first factor, "crimes that by their nature imply dishonesty, such has theft, have greater impeachment value and are significantly more likely to be admissible." *Id.* Further, "the balance tilts further toward exclusion as the offered impeachment evidence becomes more similar to the crime for which a defendant is being tried." *Id.* Allowing the government to introduce impeachment evidence of Mr. Kearney's seven prior controlled substance convictions and two prior gun convictions would present a danger that the jury would impermissibly infer that because Mr. Kearney committed similar crimes before,

he is more likely to have committed the crime charged here. The jury will already be aware that Mr. Kearney has prior convictions, as the defense intends to stipulate to that fact. Further, a limiting instruction to the jury as to the use of the evidence for impeachment purposes only would be insufficient, as the likelihood the jury would make impermissible propensity inferences is great given the similarity in conduct between the offense charged and the conduct underlying his prior gun and drug convictions. The first *Caldwell* factor weighs in favor of excluding Mr. Kearney's prior convictions as impeachment evidence to be used against him if he chooses to exercise his Constitutional right and testify in his own defense.

The second *Caldwell* factor weighs in favor of excluding Mr. Kearney's prior convictions as impeachment evidence. Even when the conviction is less than ten years old, "'the passage of a shorter period can still reduce a prior conviction's probative value.'" *Id.* at 287 (internal citation omitted). Here, Mr. Kearney's prior convictions range in age from 14 to 8 years old. Mr. Kearney's convictions on March 15, 2010, August 6, 2012 and August 14, 2014 are all over ten years old. The defense respectfully submits that six drug charges and one gun charge that occurred over ten years ago have no probative value, and thus the second *Caldwell* factor weighs against their admission. Even though one of Mr. Kearney's convictions occurred eight years ago on December 22, 2016, it is still relatively old and thus its probative value is reduced. To the extent that this Court finds the second *Caldwell* factor weighs in favor of the inclusion of his December 22, 2016 conviction, the defense submits that the three other factors combined weigh in favor of exclusion and thus outweigh this factor's relevancy.

The Third *Caldwell* factor weighs heavily in favor of excluding Mr. Kearney's prior convictions as impeachment evidence to be used against him. "'The tactical need for the accused to testify on his or own behalf may militate against use of impeaching convictions.'" *Id.* (internal citation omitted). If "'the accused must testify to refute strong prosecution evidence, then the court should consider whether, by permitting conviction impeachment, the court in effect prevents the accused from testifying.'" *Id.* Here, Mr. Kearney may choose to exercise his right to testify in his own defense to combat the narrative the defense expects the government to elicit— that Mr. Kearney was involved in a conspiracy. As the government has no evidence of a tacit agreement between Mr. Kearney and his co-defendants to participate in a drug trafficking conspiracy, Mr. Kearney's testimony would be imperative to combat the government's narrative that he was involved in such a conspiracy. As such, the defense respectfully submits that the third *Caldwell* factor weighs in favor of excluding Mr. Kearney's prior convictions as impeachment evidence against him.

The fourth *Caldwell* factor also weighs in favor of exclusion. While Mr. Kearney's credibility would admittedly be important should he chose to testify, the risk of prejudice it would bring allowing the government to use his priors as impeachment evidence substantially outweighs its probative value, especially in light of the stipulation into which the defense intends to enter. The jury will already be aware that Mr. Kearney has previously been convicted of a felony punishable by more than a one-year term of imprisonment. The nature of those convictions and the time he served for them would be highly prejudicial to Mr. Kearney, and would present a high risk of the jury using them for an impermissible purpose.

In sum, the Court should not permit the government to elicit information about the nature

and circumstances of any of Mr. Kearney's prior convictions for impeachment purposes.

**V.     The government should be precluded from mentioning anything about unindicted co-conspirators unless their identity was disclosed to the defense and the defense had a meaningful opportunity to attempt to interview them.**

Allowing the government to introduce evidence or testimony about or from unindicted co-conspirators without the defense having a meaningful opportunity to speak with them will be highly prejudicial to Mr. Kearney. To the extent that the government intends to introduce such evidence, the defense would request that the government reveal the identity of such individuals at the earliest possible time.

**VI.     This Court should bifurcate Mr. Kearney's trial as to the question of whether Mr. Kearney has a prior conviction as necessary to establish his guilt under 18 U.S.C. § 922(g)(1)**

The parties have conferred, and the defense anticipates that the government will likewise request that Mr. Kearney's trial be bifurcated as to the question of whether he has a prior conviction. The first element of 18 U.S.C. § 922(g)(1) is that the defendant has been convicted of a crime punishable by more than one year imprisonment. "Evidence that the defendant is a convicted felon tends to prejudice the defendant, generating a risk that the jury will conclude that the defendant is more likely to have committed the offenses for which the defendant is on trial simply because the defendant has previously been convicted." *See* Third Circuit Model Criminal Jury Charges, cmt. to 6.18.922G-1. "Because of this risk of prejudice, defendants generally request bifurcation of the issues to reduce the prejudicial impact of the prior conviction, seeking to have evidence of the prior conviction withheld until the jury has resolved the other issues in the case." *Id.* The Court may bifurcate the entire felon in possession charge or only the question of the defendant's prior conviction. *Id.*

Here, the defense respectfully requests that the Court bifurcate only the question of the defendant's prior conviction. During the course of the trial, the jury may hear evidence that goes to the questions of knowing possession of a firearm and whether such firearm was in or affecting state commerce, and will deliberate as to those questions when they deliberate as to the other counts of the indictment. The jury should answer special interrogatories as to the other two elements of the felon in possession charge. If they answer those interrogatories in the affirmative, the Court would then proceed to the question of whether Mr. Kearney had a prior conviction. As indicated, the defense intends to stipulate to that fact during the second part of the bifurcated proceeding. Such bifurcation will limit prejudice to Mr. Kearney.

**VII.     The defense expects that the government establish proper chain of custody as to each piece of evidence they seek to admit against Mr. Kearney.**

The defense expects that the government will be held to its obligation to establish proper chain of custody that it seeks to introduce against Mr. Kearney during the trial. To the extent that the government does not meet its burden in establishing chain of custody, the defense reserves

the right to object to the chain of custody during trial should the occasion to do so arise. To establish the chain of custody for a piece of evidence, the government must show that it took "reasonable precautions to preserve the evidence in its original condition…." *United States v. Dent*, 149 F.3d 180 (3d Cir. 1998). The defense will leave the government to its proofs to establish proper chain of custody for each item it tends to introduce and reserves the right to object to its admission if the government does not meet its burden.

## VIII.   Objections to Authenticity under Fed. R. Evid. 901

There are several government exhibits that have been produced that the defense submits the government has not properly authenticated under Fed. R. Evid. 901. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Each is addressed below. The defense hereby certifies that each of these challenges in Section VII(a) – (d) *infra* are being made in good faith.

### a.   Government Exhibits 320 and 320A have not been properly authenticated.

*See* Sections I and II, *supra*.

### b.   Government Exhibits 117-1, 117-2, 117-2A, 117-2B, 117-2C, and 117-2D have not been properly authenticated.

Government Exhibits 117-1 and 117-2[4] are a series of videos of one alleged controlled narcotics purchase, 117-2 being a continuation of 117-1. Exhibits 117-2A, 117-2B, 117-2C, and 117-2D[5] are still photographs allegedly captured from these videos. The government contends that these videos were taken on June 3, 2021 and capture what they refer to as "Buy #36," or the 36th controlled narcotics purchase completed throughout their investigation. The files as produced do not reflect that these videos were taken on June 3, 2021. Rather, the files are named with a different date, May 13, 2021. In many of the buy videos the government produced, at the beginning of the video, an agent will be heard clearly stating the date and time of the recording. Here, however, there is no such audio recording of an agent on either Exhibit 117-1 or Exhibit 117-2. As such, there is no clear indication that these videos were taken on the date that the government purports they were taken. In other words, we do not know for sure when these videos were taken. Because there is nothing within the video itself that serves to evidence the videos are of what the government says they are, the defense objects to their admittance under Fed. R. Evid. 901. Likewise, the defense objects to the admittance of the still photographs captured from these videos on the same grounds.

---

[4] Exhibits 117-1 and 117-2 are attached under separate cover on the aforementioned flash drive as Defense Exhibits D and E, respectively.
[5] Exhibits 117-2A, 117-2B, 117-2C, and 117-2D are attached under separate cover on the flash drive as Defense Exhibit F.

### c. Government Exhibits 115, 115A, 115B, 115C, and 115D have not been properly authenticated.

Like Exhibits 117-1 and 117-2, Exhibit 115[6] is a video of an alleged controlled narcotics. Exhibits 115A, 115B, 115C, and 115D[7] are still photos captured from that video. The government contends that this video captures "Buy #33" and was taken on May 19, 2021. While the date stamp on the file as produced to the defense reflects May 19, 2021 as the pertinent date, there is nothing within the video itself that indicates which date it was taken. As mentioned, many of the other buy videos produced by the government include clear audio of an agent stating the date and time. No such audio exists here. As such, there is nothing within the video itself that serves to evidence that the video is of what the government says it is. As such, the defense objects to their admittance under Fed. R. Evid. 901. The defense likewise objects to the admittance of the still photographs taken from this video on the same grounds.

### d. Government Exhibits 113-1, 113-2, 113-1A, and 113-1B have not been properly authenticated.

Like in subsections (b) and (c) *supra*, Exhibits 113-1 and 113-2[8] are a series of videos of an alleged controlled narcotics purchase, 113-2 being a continuation of 113-1. Likewise, Exhibits 113-A and 113-B[9] are still photographs captured from the videos. The government contends that these videos capture "Buy #30" and was taken on May 4, 2021. While the date stamp on the file as produced to the defense reflects May 4, 2021 as the pertinent date, there is nothing within the videos themselves that indicate what date they were taken. While the agent in the video can be heard saying the year, "2021," he does not also give a month and date. As such, there is nothing within the videos themselves that serves to evidence that the videos are of what the government says they are, and the defense thus objects to their admittance under Fed. R. Evid. 901. Likewise, the defense objects to the admittance of the still photographs captured from these videos on the same grounds.

### IX.    The defense objects to the admittance of any government-created transcripts of audio-visual evidence.

The government has produced five separate exhibits to the defense (113-1T, 113-2T, 115T, 116T, and 117-2T)[10] that are government made transcripts of certain excerpts of audio and video recordings of other video exhibits (Exhibits 113-1, 113-2, 115, 116, and 117-2, respectively). The defense objects to the admittance of these transcripts into evidence for two reasons. First, the defense has objected to the admittance of the underlying audio video exhibits as outlined in section VII(b) – (d), *supra*. Thus, any transcript of an unadmitted audio-visual exhibit would be inadmissible as not relevant. Second, even if the Court were to admit Exhibits

---

[6] Exhibit 115 is on the flash drive as Defense Exhibit G.

[7] Exhibits 115A, 115B, 115C, and 115D are on the flash drive as Defense Exhibit H.

[8] Exhibits 113-1 and 113-2 are on the flash drive as Defense Exhibits I and J, respectively.

[9] Exhibits 113A and 113B are on the flash drive as Defense Exhibit K.

[10] These transcripts were combined into one file and are attached on the flash drive as Defense Exhibit L.

113-1, 113-2, 115, 116, and 117-2, the transcripts are not the best evidence under Fed. R. Evid. 1002. The best evidence of what was said or done in the audio-visual exhibits in question are the audio-visual exhibits themselves. *See* Fed. R. Evid. 1002, "an original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." As such, to the extent the Court admits some or all of the audio-visual exhibits underlying the transcripts, the defense submits that the transcripts should not be admitted under Fed. R. Evid. 1002.

### X.    The defense reserves the right to the authentication of other evidence the government seeks to admit as the trial progresses.

The defense has no information that any other purported government exhibits cannot be properly authenticated at this juncture, but leaves the government to their proofs to establish the proper foundation for admittance for each piece of evidence they seek to admit. To the extent the government is unable to do so, the defense reserves the right to object to admittance of evidence under Fed. R. Evid. 901 as the trial progresses.

### XI.    While the defense has no exhibits to introduce at this time, the defense reserves the right to seek to introduce exhibits should the occasion arise.

At this time, the defense has no exhibits to introduce in connection with Mr. Kearney's trial. As the government continues to produce exhibits and discovery, as late as Friday, January 3, 2025, the defense reserves the right to seek to introduce exhibits should it become necessary.

### XII.    The defense respectfully requests leave to file additional motions.

Mr. Kearney anticipates that legal issues may arise that may necessitate the filing of additional motions *in limine*, especially in light of the fact that the Government has produced exhibits as late as Friday, January 3, 2025. In the interest of fundamental fairness, Mr. Kearney respectfully requests that he be permitted to file additional motions as the need arises. He will, of course, notify the Government of his intention to file any motions as soon as it becomes apparent that additional motions are necessary.

### XIII.    Conclusion

For the foregoing reasons, the defense respectfully requests that Your Honor grant the above requested relief.

Respectfully Submitted,

Lorraine Gauli-Rufo, Esq.
*Attorney for Angel Kearney*

12

cc: Robert Frazer, AUSA
    James Graham, AUSA