

*James H. Graham*
*Robert Frazer*
*Assistant United States Attorneys*

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*

January 8, 2025

**VIA ECF & EMAIL**

Honorable Brian R. Martinotti
United States District Court
Frank R. Lautenberg Post Office & U.S. Courthouse
2 Federal Square
Newark, New Jersey 07101

      Re:    <u>United States v. Angel Kearney</u>
             Crim. No. 21-838 (BRM)

Dear Judge Martinotti:

      We submit the following motions *in limine* seeking rulings prior to trial, which is currently scheduled for **Tuesday, January 14, 2025**. Specifically, the Government (1) seeks a preliminary ruling that the recording of a May 26, 2021 controlled narcotics sale by the Defendant is admissible in full; and (2) that two sets of the Defendant's previous felony convictions should be deemed admissible for impeachment purposes under Rule 609 in the event that the Defendant elects to testify. For the reasons discussed below, the Court should grant the Government's motions *in limine*.

## BACKGROUND

      On June 29, 2021, law enforcement arrested Angel Kearney (the "Defendant") and over a dozen others for their involvement in a drug-trafficking conspiracy that operated outside of 295 Fairmount Avenue, a three-story building located on a residential block in Newark, New Jersey ("295 Fairmount"). The arrests that day stemmed from a months' long investigation conducted by the Federal Bureau of Investigation (the "FBI") into narcotics distribution occurring in and around 295 Fairmount.

      During the investigation, law enforcement used investigative techniques including, but not limited to, engaging in controlled narcotics purchases with members of the conspiracy through use of confidential

sources.  In total, the FBI conducted approximately 35 controlled narcotics purchases as part of the investigation, including three separate controlled purchases directly from the Defendant.  Each of the 35 controlled narcotics purchases are audio and video recorded.

The FBI also installed pole cameras outside of 295 Fairmount during the time period of the drug trafficking conspiracy.  Those recordings showed the Defendant and his co-conspirators engaging in hand-to-hand narcotics transactions on a near-daily basis with hundreds of customers, who often lined up at the entrance to 295 Fairmount to buy the drugs.

At the time of the Defendant's arrest on June 29, 2021—approximately one month after the Defendant, using the Impala, sold fentanyl to the FBI's confidential source for a third time—law enforcement seized the Impala from the parking lot outside of the building where the Defendant was arrested.  Inside the Impala, law enforcement found a loaded firearm, fentanyl and heroin packaged for sale, and various forms of identification belonging to the Defendant.

On March 11, 2022, a Newark federal grand jury returned a forty-four count Second Superseding Indictment against the Defendant and others.  Specifically with respect to the Defendant, the Second Superseding Indictment charges him with conspiracy to distribute and possess with intent to distribute 400 grams or more of fentanyl and quantities of heroin and cocaine base, contrary to 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(C), in violation of 21 U.S.C. § 846 (Count One); four counts of distributing and possessing with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts 34, 35, 38, and 40); possession of a firearm in furtherance of a drug trafficking crime (Count 41); and possession of a firearm and ammunition by a convicted felon (Count 42).

Trial is scheduled to commence on January 14, 2025.

## LEGAL ARGUMENT

### I. THE RECORDING OF A MAY 26, 2021 NAROTICS PURCHASE IS ADMISSIBLE AT TRIAL.

The Government moves for a pretrial ruling as to the admissibility of an audio and video recording that captures a May 26, 2021 controlled narcotics purchase (the "Audio and Video") between a confidential human source (the "CHS") working with the Federal Bureau of Investigation and

the Defendant.[1] For the reasons set forth below, the Audio and Video—including portions that capture references to the Defendant having a firearm in his lap during the transaction (the "Firearm Audio")—should be deemed admissible in its entirety because it is intrinsic to multiple crimes charged in the Second Superseding Indictment, and in the alternative, is admissible pursuant to Federal Rule of Evidence 404(b).

### A.	Factual and Procedural Background

The Audio and Video captures the CHS arriving in his car at a pre-determined location to purchase narcotics from the Defendant on May 26, 2021. The CHS exits his vehicle and approaches a black Chevrolet Impala (the "Impala") in which the Defendant is seated in the driver's seat. After opening the passenger door, the CHS can be heard saying "you don't want to sell that, do you," to which the Defendant responds in the negative. A hand-to-hand narcotics purchase occurs and the CHS then walks away from the Impala and gets back in his car. Approximately 45 seconds later, while driving away from the narcotics transaction, the CHS can be heard on the Audio and Video saying "he got a P40 right in his lap. I don't know if you want to grab him now."

Approximately one month later, on June 29, 2021, law enforcement arrested the Defendant and approximately fifteen others for their roles in the conspiracy at issue in this case. The Impala seen in the Audio and Video was found in the parking lot of the apartment building where the Defendant was apprehended. Inside the Impala, law enforcement found a firearm and fentanyl packaged for sale, as well as the Defendant's wallet and various forms of the Defendant's identification.[2]

Count 35 of the Second Superseding Indictment charges the Defendant with fentanyl distribution for the May 26, 2021 controlled narcotics transaction described above. The Defendant is not charged for possessing a firearm during that May 26, 2021 transaction. Instead, the Defendant is charged for possessing a firearm on June 29, 2021—the day of his arrest. Specifically, Count 41 of the Second Superseding Indictment charges the Defendant with possession of a firearm in furtherance of a

---

[1] A copy of the Audio and Video, labeled Exhibit 1, is appended to a courtesy copy of the Government's submission that will be delivered to the Court.

[2] Pursuant to a search warrant for the Impala, law enforcement seized the car on June 29, 2021, and transported it to an FBI field office. The FBI searched the car on June 30, 2021, at which point law enforcement recovered the contraband and identification material.

drug trafficking crime and Count 42 charges him with possession of a firearm and ammunition by a convicted felon. As set forth below, the Government offers the Audio and Video as proof of certain essential elements of the crimes charged in the Second Superseding Indictment, meaning they are intrinsic to those charged crimes. Alternatively, the Government offers the Audio and Video for multiple non-propensity purposes, including that to demonstrate the Defendant's knowledge, absence of mistake or accident with respect to the firearm found in the Impala on the day of the Defendant's arrest.

### B.   Applicable Law

Federal Rule of Evidence 404(b) "does not extend to evidence of acts which are intrinsic to the charged offense." *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002) (internal quotations omitted); *see also United States v. Hoffecker*, 530 F.3d 137, 188-89 (3d Cir. 2008). Critically, "[i]f uncharged misconduct directly proves the charged offense, it is not evidence of some 'other' crime." *United States v. Green*, 617 F.3d 233, 248-49 (3d Cir. 2010) (quoting *United States v. Gibbs*, 190 F.3d 188, 218 (3d Cir. 1999)). This is because, "[w]hen the evidence of another crime is necessary to establish an element of the offense being tried, there is *no other crime*." *United States v. Blyden*, 964 F.2d 1375, 1378 (3d Cir. 1992) (emphasis added).

Additionally, "uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." *Green*, 617 F.3d at 249 (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). Moreover, "[e]ven if the evidence is 'extremely prejudicial to the defendant, the court would have no discretion to exclude it because it is proof of the ultimate issue in the case.'" *Hoffecker*, 530 F.3d at 188-89 (quoting *Gibbs*, 190 F.3d at 218) (quoting 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239, at 450-51 (1978)).

### C.   Discussion

#### 1. The Audio and Video is intrinsic to crimes charged in the Second Superseding Indictment and therefore admissible in full.

The Government should be permitted to admit the Audio and Video in full. To start, the portion of the Audio and Video depicting the May 26, 2021 drug sale is undoubtedly admissible given it captures the underlying conduct charged in Count 35 of the Second Superseding Indictment. But in addition to proving that the Defendant sold drugs on May 26, 2021, the

Government also intends, and should be permitted, to present the jury with those portions of the Audio and Video that capture the CHS asking the Defendant during the transaction, "you don't want to sell that, do you?" and the CHS's post-transaction statement that there was a "P40 right in his lap" (those two statements collectively, the "Firearm Audio"). Although the Defendant is not charged for possessing a firearm that day, the Firearm Audio nonetheless "directly proves" multiple crimes charged in the Second Superseding Indictment and is therefore "not evidence of some 'other' crime" but is intrinsic to multiple charged offenses. *Green*, 617 F.3d at 248-49.

First, the Firearm Audio is intrinsic to the Defendant's May 26, 2021 drug distribution because possession of a firearm near and contemporaneous with the controlled narcotics purchase shows the Defendant's intent to distribute, rather than merely personally use, the controlled substances, as contemplated in the Third Circuit's Model Jury Instructions. *See* 3d Cir. Model Crim. Jury Instructions 6.21.841-5 ("In determining [the defendant's] intent to distribute controlled substances, you may also consider, among other things, the quantity and purity of the controlled substance, the manner in which the controlled substance was packaged, and **the presence or absence of weapons**, large amounts of cash, or equipment used in the processing or sale of controlled substances.") (emphasis added); *see also United States v. Yarbough*, 785 F. Appx. 41, 45 (3rd Cir. 2019) ("We have previously noted that firearms possession is highly probative of drug distribution conspiracies because conspirators will use firearms to protect their operation.") (citing *United States v. Price*, 13 F.3d 711, 719 (3rd Cir. 1994)). In other words, the Firearm Audio is evidence that tends to prove one of the essential elements of the drug distribution offense charged in Count 35: that the Defendant possessed the fentanyl with the intention of distributing it.

Second, the Firearm Audio is attribution evidence, tending to prove that the gun recovered when the Defendant was arrested approximately one month later (as set forth in Counts 41 and 42 of the Second Superseding Indictment), belonged to him. Specifically, the Firearm Audio tends to prove that the gun observed on May 26, 2021 *was the same gun found upon the Defendant's arrest* on June 29, 2021. The Firearm Audio reflects the Defendant having what the CHS thought was a P40 handgun in the Impala. Just weeks later, the law enforcement found a 9mm handgun—a gun that looks strikingly similar to a P40—in the exact same car. That is not propensity evidence. That is evidence that tends to prove that the gun found in June belonged to the Defendant because he possessed that same gun just weeks earlier. The Firearm Audio therefore reflects "uncharged misconduct" (possessing a firearm on May 26, 2021) that "directly proves [a] charged offense" (possessing that same firearm on

June 29, 2021) by serving as evidence that the Defendant previously possessed the gun recovered from the Impala on June 30, 2021. *Green* at 248-49.

Lastly, the Firearm Audio is also evidence of the drug conspiracy charged in Count One of the Second Superseding Indictment, which states in the "Manner and Means" section that the co-conspirators "possessed, stored, and used firearms and ammunition to protect" their drug trafficking business. It is therefore intrinsic not only to the May 26, 2021 drug distribution charge and the June 29, 2021 firearm charges, but also to the overall drug conspiracy charged in Second Superseding Indictment for the same reasons articulated above. *See Yarbough*, 785 F. App'x at 45.

### 2. Alternatively, the Firearm Audio should be admitted as 404(b) evidence.

If the Court were to disagree and rule that the Firearm Audio is not intrinsic to the drug distribution, firearm, or conspiracy counts, the Government should be permitted to alternatively offer that Audio for the limited purposes authorized by Federal Rule of Evidence 404(b). Federal Rule of Evidence 404(b) provides in pertinent part that:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

The Rule is one of inclusion, "intended to emphasize admissibility of 'other crime' evidence." *United States v. Sriyuth*, 98 F.3d 739, 745 (3d Cir. 1996). The Rule favors the admissibility of such evidence unless it is offered *solely* to show that a defendant has criminal propensities. *Huddleston v. United States*, 485 U.S. 681, 688-89 (1988); *see United States v. Johnson*, 199 F.3d 123, 128 (3d Cir. 1999) ("We favor the admission of such evidence, if relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime." (internal citations omitted)).

In *Huddleston*, the Supreme Court explained that, to be admissible, 404(b) evidence must: (1) have a proper evidentiary purpose, (2) be relevant under Federal Rule of Evidence 402, (3) have probative value that substantially outweighs its potential for unfair prejudice under Federal Rule of Evidence 403, and (4) be accompanied, upon requests, by an

instruction to the jury "that the similar acts evidence is to be considered only for the proper purpose for which it was admitted." 485 U.S. at 691-92; *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002); *see also United States v. Smith*, 725 F.3d 340, 345 (3d Cir. 2013) ("We . . . do not exclude evidence simply if it invites character inferences, but only evidence that is used to prove a person's character and that invites the inference that the person acted in conformity with that character."). The Government, as the proponent of Rule 404(b) evidence, "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed [the proffered prior act], he therefore is more likely to have committed [the charged offense]." *United States v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992).

Here, the Firearm Audio satisfies the *Huddleston* test. First, the evidentiary purpose is to prove that the Defendant's possession of a firearm at the time of his arrest—just one month after the creation of the Firearm Audio—constituted knowing possession, and was not a mistake or accident. *See* F.R.E. 404(b)(2).

Second, the Defendant's possession of a firearm on May 26, 2021, *during* a drug transaction, is probative evidence of his motive for possessing the firearm recovered from his vehicle on June 30, 2021: for protection in connection with drug dealing, i.e., in furtherance of drug distribution, as charged in Count 35.

Third, while the proffered evidence may have a prejudicial effect on the Defendant, such effect does not "substantially outweigh" the probative value of the evidence and should not be excluded under Rule 403. Trial judges should invoke Rule 403 only "sparingly" to exclude relevant evidence because of potential unfair prejudice. Weinstein's Federal Evidence § 403.02[2][a] (citing *United States v. Clifford*, 704 F.2d 86, 89-90 (3d Cir. 1983)). Evidence is unfairly prejudicial only if it suggests a decision on an improper basis. *See* Fed. R. Evid. 403, Advisory Committee Note.

Furthermore, the Court can cure any potential prejudice to the Defendant by instructing the jury regarding the proper purposes of such evidence, and the Government urges the Court to give such a limiting instruction in this case if it rules that the proffered evidence is admissible pursuant to Rule 404(b). Indeed, the Third Circuit has held on more than one occasion that, where the jury is instructed that it may consider "other act" evidence only for the limited purpose(s) for which it is admitted, the danger of prejudice to the defendant resulting from the admission of such evidence is scant. *See, e.g., Givan*, 320 F.3d at 461-62; *United States v.*

*Vega*, 285 F.3d 256, 264 (3d Cir. 2002); *United States v. Saada*, 212 F.3d 210, 224 (3d Cir. 2000).

Accordingly, to the extent that any portion of the Firearm Audio is not deemed intrinsic to the crimes charged in the Second Superseding Indictment, that portion should be admissible pursuant to 404(b) for the limited purposes of proving knowledge, absence of mistake, and lack of accident.

### 3. The Firearm Audio Falls under the exception to hearsay for present sense impressions.

Lastly, whether the Firearm Audio is admitted as intrinsic to the crimes charged or alternatively as 404(b) evidence, it should not be precluded as hearsay because the CHS's statements fall squarely under the hearsay exception for present sense impressions. *See* Fed. R. Evid. 803(1).

According to the Third Circuit, "immediacy lies at the heart of the [present sense impression] exception" and "is *the* factor that assures trustworthiness." *United States v. Green*, 556 F.3d 151, 156 (3d Cir. 2009) (internal quotation and citations omitted) (emphasis in original). "Nevertheless, some brief temporal lapse is permissible so as to accommodate 'the human realities that the condition or event may happen so fast that the words do not quite keep pace.'" *Green*, 556 F.3d at 156 (quoting 4 Federal Evidence § 8:67 at 562). Indeed, the advisory notes to Fed. R. Evid. 803 specifically state that "[w]ith respect to the time element, [803(1)] recognizes that in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is allowable." Fed. R. Evid. 803(1) Adv. Comm. Notes (1975).

In exploring the bounds of what constitutes a "brief temporal lapse," the Third Circuit in *Green* rejected the Government's attempt to introduce a confidential source's written statement made 50 *minutes* after the events at issue. In doing so, the court distinguished a 50-minute lapse with various cases from across the country all of which found the statements at issue to be present sense impressions, most of which were made less than one minute after the event in question. Specifically, the *Green* court cited the following cases: "*United States v. Shoup*, 476 F.3d 38, 42 (1st Cir.2007) (911 phone call made "only one or two minutes … immediately following" event admissible); *United States v. Danford*, 435 F.3d 682, 687 (7th Cir.2006) (statement made "less than 60 seconds" after witnessing robbery qualified as present-sense impression); *United States v. Jackson*, 124 F.3d 607, 618 (4th Cir.1997) (statement by witness to police upon their arrival at scene that defendant was threatening to kill her family was

admissible as "description of ongoing events"); *Blakey*, 607 F.2d at 779, 785–86 (not error to admit statement made at most 23 minutes after event). *Green* at 156."

Here, the CHS's statements, captured in the Firearm Audio, occurred just 45 seconds after the CHS observed the Defendant's firearm and about 30 seconds after the CHS returned to his vehicle following the transaction. That more than satisfies the requirement that the statement at issue be made near contemporaneously despite a "slight lapse" of time between the observation and the out-of-court statement. Fed. R. Evid. 803(1) Adv. Comm. Notes (1975).

Alternatively, the statements are also being offered to show their impact on the listener—here, law enforcement—and to provide context for what law enforcement did in response to the statement, which was to prepare an operation to seize the Defendant's firearm if it was in the Defendant's possession during the next controlled narcotics purchase carried out by the CHS.

Therefore, whether admitted as intrinsic to the crimes charged or for an alternative permissible purpose under Rule 404(b), the Firearm Audio qualifies as a present sense impression that is excepted from the rule against hearsay and is therefore admissible.

## II. IF THE DEFENDANT TESTIFIES AT TRIAL, CERTAIN OF HIS PRIOR FELONY CONVICTIONS SHOULD BE ADMITTED PURSUANT TO FEDERAL RULE OF EVIDENCE 609.

In the event that Defendant Angel Kearney elects to testify at trial, the Government moves, pursuant to Federal Rule of Evidence 609(a)(1)(B), to admit evidence of his felony convictions stemming from two of his five prior criminal cases, including: (1) convictions for Resisting Arrest and Distribution of Controlled Dangerous Substances, for which he was sentenced to concurrent three-year terms of imprisonment on or about September 18, 2014 in New Jersey Superior Court (the "2014 Case"); and (2) convictions for Possession of a Firearm and Conspiracy to Distribute Controlled Dangerous Substances (for which he was sentenced to concurrent 42-month terms of imprisonment on or about December 22, 2016 in New Jersey Superior Court (the "2016 Case").[3]

---

[3] As background, two of the Defendant's other prior convictions—one for possession of a firearm and the other for distribution of controlled dangerous substances—are from 2009 and fall outside the ten-year lookback period. Convictions stemming from the other remaining criminal matter—2013 convictions for possession of a controlled dangerous

> As the Third Circuit has explained:
>
> Rule 609 is premised on "the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath." *Walden v. Georgia Pac. Corp.*, 126 F.3d 506, 523 (3d Cir. 1997) (citations omitted). "Rule 609 evidence is admitted in order to inform the jury about the character of the witnesses whose testimony the jury is asked to believe." *Id.* (citing *United States v. Martinez*, 555 F.2d 1273, 1275 (5th Cir. 1977)). When a defendant chooses to testify at his trial he places his credibility "directly at issue." *United States v. Beros*, 833 F.2d 455, 463-64 (3d Cir. 1987).

*United States v. Murphy*, 172 F. App'x 461, 462-63 (3d Cir. 2006) (unpublished).

Rule 609(a)(1)(B) provides that when a witness was convicted of a crime punishable by more than one year in the convicting jurisdiction, the criminal conviction "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Rule 609(b) limits the admissibility of a prior conviction "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later."[4]

Each of the convictions that the Government seeks to admit fall within the 10-year look-back period and constitute felony offenses, as each offense of conviction is punishable by a term of imprisonment of more than one year. Therefore, the evidence must be admitted so long as its probative value outweighs its prejudicial effect.

---

substance and a resisting arrest (the "2013 Case")—fall within the 10-year lookback period. However, in the event that the Court grants the instant motion to admit convictions from the 2014 Case and the 2016 Case, described above, the Government will not seek to introduce evidence of the 2013 Case, even though those convictions fall within the scope of permissible impeachment material under Rule 609.

[4] Here, all of the convictions the Government seeks to admit fall within the ten-year lookback period. The convictions from the 2014 Case, though sentenced just outside the ten-year period in September 2014, is within the applicable period because the Defendant remained in custody in connection with those convictions until January 10, 2016.

To determine whether the probative value of the evidence outweighs its prejudicial effect, courts should analyze four factors: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the defendant's testimony to the case; and (4) the importance of the credibility of the defendant." *United States v. Caldwell*, 760 F.3d 267, 286 (3d Cir. 2014) (citing *Gov't of V.I. v. Bedford*, 671 F.2d 758, 761 n.4 (3d Cir. 1982)). The Government respectfully submits that application of the Third Circuit's four-factor *Caldwell* test to determine whether the probative value of the impeachment evidence outweighs its prejudicial effect favors admission of the above convictions for impeachment purposes under Rule 609(a)(1)(B).

Regarding the first factor—"the kind of crime involved"—"courts consider both the impeachment value of the prior conviction as well as its similarity to the charged crime." *See Caldwell*, 760 F.3d at 286. "The impeachment value relates to how probative the prior conviction is to the witness's character for truthfulness." *Id.* (citation omitted). "[C]rimes that by their nature imply some dishonesty . . . have greater impeachment value and are significantly more likely to be admissible." *Id.* (citation omitted). "Where a defendant's prior conviction is for the same or substantially same conduct as the charged crime there is 'inevitable pressure on lay jurors to believe that "if he did it before he probably did so this time."'" *United States v. Cherry*, Crim. No. 10-091, 2010 WL 3156529, at *6 (E.D. Pa. Aug. 10, 2010) (quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967)).

Even where there are similarities between the crime with which the defendant is impeached and the present offense, the Third Circuit has held that this concern can be alleviated with a limiting instruction issued by the Court, which "[j]uries are presumed to follow." *See United States v. Patterson*, Crim. No. 09-513, 2009 WL 3423839, at *3 (E.D. Pa. Oct. 21, 2009) (unpublished) (citing *United States v. McKee*, 506 F.3d 225, 230 (3d Cir. 2007)).[5] Moreover, the fact that Kearney has a history of committing the same type of criminal conduct—such that his prior convictions that fall within the purview of Rule 609 are similar to his present charges—does not shield him from impeachment. The Sixth Circuit held as much under similar circumstances in *United States v. Frazier*, 314 F. App'x 801, 804-06 (6th Cir. 2008) (not precedential). There, the defendant was charged with several controlled substance offenses, including distribution of crack cocaine and conspiracy, unlawful possession of a firearm by a convicted felon, and possession of a firearm in furtherance of a predicate

---

[5] The Government would sanitize this prior conviction and describe the unlawful possession of a firearm without reference to Kearney's status as a previously convicted felon.

offense, in violation of 18 U.S.C. § 924(c).  Over the defendant's objection, the district court concluded that the government was permitted to impeach the defendant with his prior conviction for the unlawful possession of a firearm.  In affirming the district court's determination, the Sixth Circuit emphasized that the defendant's election to testify placed his own credibility at issue, and the district court's inclusion of a limiting instruction curbed the potential for prejudice.  In line with the analysis in *Frazier,* application of the first factor favors admission here.

The second factor in the balancing analysis is the "age of the prior conviction."  *Caldwell,* 760 F.3d at 287.  The older the conviction, the lesser its probative value, especially if combined with evidence of the defendant's changed character.  *See id.*  Here, however, Kearney was released from prison after serving a three-year sentence for the 2014 Case within Rule 609's ten-year lookback period.  Just three months after his January 2016 release, Kearney re-offended and eventually was convicted for the offenses underlying the 2016 Case in November 2016. For those convictions, Kearney was sentenced to 42 months' imprisonment—a time period ending just months before the conduct in the instant matter commenced in July 2020.  In other words, these convictions not only fall well within ten-year lookback, but also demonstrate a repeated disregard for the rule of law, undermining any claim that any of the convictions at issue are remote.  The application of the second factor therefore weighs in favor of admission.

The third factor is the importance of the defendant's testimony to the case.  "The tactical need for the accused to testify on his or her own behalf may militate against use of impeaching convictions.  If it is apparent to the trial court that the accused must testify to refute strong prosecution evidence, then the court should consider whether, by permitting conviction impeachment, the court in effect prevents the accused from testifying."  *Caldwell,* 760 F.3d at 287 (quoting Glenn Weissenberger & James J. Duane, Weissenberger's Federal Evidence § 609.2 (4th ed. 2001)).  However, if "the defense can establish the subject matter of the defendant's testimony by other means, the defendant's testimony is less necessary, so a prior conviction is more likely to be admitted."  *Id.* at 288 (quoting Weinstein's Federal Evidence § 609.05[3][e]); *see also United States v. Causey,* 9 F.3d 1341, 1344 (7th Cir. 1993) (noting the prejudicial impact diminished where defendant "did not obviously need to testify to raise his various defenses" because several other defense witnesses provided the same testimony).

Given the strength of the Government's evidence, Kearney may elect to testify to refute that evidence and may not be able to establish the subject matter of his testimony by other means.  His testimony therefore

would be important to his defense. The third factor therefore admittedly weighs against admission.

The fourth factor concerns the significance of the defendant's credibility to the case. *Caldwell*, 760 F.3d at 288. "When the defendant's credibility is a central issue, this weighs in favor of admitting a prior conviction." *Id.* (quoting Weinstein's Federal Evidence § 609.05 [3][f]); *see United States v. Johnson*, 302 F.3d 139, 153 (3d Cir. 2002) (affirming admission of prior conviction under Rule 609(a) because the defendant's credibility was important). Here, Kearney's credibility, should he testify, would be critical to the case because he would be providing a firsthand account about the facts of the case. If Kearney takes the stand to protest his innocence as to the charged conduct, the Government should be able to impeach him with evidence of his prior convictions.

On balance, application of the *Caldwell* factors to this case weighs in favor of admitting Kearney's 2014 resisting arrest and drug distribution convictions and his 2016 firearm and drug distribution convictions.

### III.  Conclusion

For the foregoing reasons, the Government respectfully submits that the Court should rule that: (1) the Audio and Video is admissible at trial in its entirety because it is intrinsic to the charged crime or, in the alternative, admissible under Rule 404(b); and (2) the Defendant's convictions from the 2014 Case and 2016 Case, described herein, should be deemed admissible for impeachment purposes under Rule 609 in the event that the Defendant elects to testify.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By:  _____
Robert Frazer
James H. Graham
Assistant U.S. Attorneys